## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

MICHAEL COLOSI,

               Plaintiff,

      v.

CHARLOTTE COUNTY, FLORIDA;
UNITED STATES FISH AND
WILDLIFE SERVICE; MARTHA
WILLIAMS, in her official capacity as
Director of the United States Fish and
Wildlife Service; MIKE OETKER, in his
official capacity as Regional Director of
the United States Fish and Wildlife
Services Southeast Region; UNITED
STATES DEPARTMENT OF THE
INTERIOR; and DEB HAALAND, in
her official capacity as Secretary of the
Interior,

               Defendants.

Civil Action No. 2:24-cv-1004

## VERIFIED COMPLAINT FOR DECLARATORY AND
## INJUNCTIVE RELIEF

## INTRODUCTION

1.    Before it will allow Michael Colosi to build a modest home on his

own property, Charlotte County demands that he first pay an enormous and

arbitrary fee because a federally protected bird, the Florida scrub-jay, might

nest on his land. But the U.S. Constitution requires that when a government

orders property owners to pay fees like this, it must first demonstrate not only

that the fee will offset the impacts of the proposed use of land, but that the fee

is "roughly proportional" to those demonstrated impacts. Here, however, Charlotte County did not engage in that mandatory process, and established its fees based on the overall size of the property, not simply the portion where Mr. Colosi would build his home. Instead of even a rough tailoring of the money demanded to actual impacts, the County's fee schedule is arranged into arbitrary tiers that increase somewhat exponentially—but not at all proportionally—with the overall size of the property. To make matters worse, those fees apply regardless of whether Florida scrub-jay habitat even exists on the property. This is unconstitutional. The County's fee lacks both a nexus and a rough proportionality to the potential impacts of Mr. Colosi's planned development of a moderately-sized, single-family home.

2.      The federal regulation underlying the County's development fees is also unconstitutional. Regulation of the Florida scrub-jay—a purely intrastate species with no commercial or economic value—does not substantially affect interstate commerce and thus exceeds Congress' limited authority under the Commerce and Necessary and Proper Clauses. Therefore, it is unconstitutional under the Constitution's enumerated powers in U.S. Const. art. I, § 8.

## PARTIES

3.      Plaintiff Michael Colosi ("Mr. Colosi") is an individual and a citizen of the United States. Mr. Colosi is domiciled and resides in Ave Maria, Florida.

2

He is the fee simple owner of 5.07 acres of vacant real property located at 18151 Bending Willow Court, Punta Gorda, in Charlotte County, Florida ("Property").

4.      Defendant Charlotte County ("County") is a political subdivision of Florida and is a "person" under 42 U.S.C. § 1983. The County has the power to implement and enforce state and local laws and regulations for managing the habitat of the Florida scrub-jay, a species designated "threatened" under the Endangered Species Act. Endangered and Threatened Wildlife and Plants; Threatened Status for the Florida Scrub Jay, 52 Fed. Reg. 20,715 (June 3, 1987).

5.      Defendant United States Fish and Wildlife Service ("USFWS") is an agency of the United States, within the Department of the Interior, and has been delegated responsibility for the day-to-day administration of the Endangered Species Act, including adoption and enforcement of the regulations under ESA Section 4(d), 16 U.S.C. § 1533(d). As such, the Fish and Wildlife Service is responsible for enforcing the regulation prohibiting the take of the Florida scrub-jay.

6.      Defendant Martha Williams is the Director of USFWS ("Director") and is sued in her official capacity. The USFWS Director is responsible for administering the ESA and enforcing the regulation prohibiting the take of the Florida scrub-jay.

7.    Defendant Mike Oetker is the Regional Director of the USFWS ("Regional Director") Southeast Region and is sued in his official capacity. The Southeast Region includes Florida. The Regional Director is responsible, in part, for administering the ESA within the Southeast Region and enforcing the regulation prohibiting the take of the Florida scrub-jay.

8.    Defendant United States Department of the Interior ("Department") is an agency of the United States. Congress has charged the Department with administering the ESA for all terrestrial species. As the Department oversees the administration of the ESA, it is responsible for adopting and enforcing the regulation prohibiting the take of the Florida scrub-jay.

9.    Defendant Deb Haaland is the Secretary of the Interior ("Secretary") and is named herein and sued in her official capacity. The Secretary is the official charged with enacting regulations pursuant to ESA Section 4(d), 16 U.S.C. § 1533(d). As the Secretary is responsible for enacting these regulations, she is responsible for adopting and enforcing the regulation prohibiting the take of the Florida scrub-jay.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); § 1343 (jurisdiction to redress deprivations of civil rights); § 1346(a)(2) (civil action against the

United States); § 2201 (authorizing declaratory relief); § 2202 (authorizing injunctive relief), and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

### The Endangered Species Act

11.     The Endangered Species Act of 1973, 16 U.S.C. § 1531, *et. seq.*, grants USFWS authority to list as endangered "any species which is in danger of extinction throughout all or a significant portion of its range," and to list as threatened "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. §§ 1532(6), (20); 1533.

12.     The ESA lists various prohibited acts for endangered species, including the "take" of any endangered or threatened species. 16 U.S.C. § 1538(a)(1)(B), 50 C.F.R. § 17.21(c); 50 C.F.R. § 17.31(a). "'Take' means to harass, harm, pursue, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any of these activities." 16 U.S.C. § 1532(19).

13.     "'Harm' in the definition of 'take' in the [ESA] . . . may include significant habitat modification or degradation . . . ." 50 C.F.R. § 17.3.

14.     The ESA provides that "[t]he Secretary may permit . . . any taking otherwise prohibited . . . if such taking is incidental to, and not the purpose of, the carrying out of an otherwise lawful activity." 16 U.S.C. § 1539(a)(1)(B); *see* 50 C.F.R. § 402.02.

15.    To obtain an Incidental Take Permit ("ITP"), an applicant must submit a Habitat Conservation Plan ("HCP") to USFWS that details, in part, the impacts of the taking and how they will be minimized and mitigated. 16 U.S.C. § 1539(a)(2)(A).

**Florida scrub-jay and the County's HCP**

16.    The Florida scrub-jay is a long-tailed, blue songbird endemic to Florida. It inhabits dry, sandy, scrubby oak and pine flatwoods throughout peninsular Florida. In 1987, USFWS listed the Florida scrub-jay (*Aphelocoma coerulescens*) as threatened. 52 Fed. Reg. 20,715.

17.    The Florida scrub-jay exists only Florida.

18.    The Florida scrub-jay has no commercial or economic value.

19.    In 2014, USFWS issued the County a 30-year ITP based on the County-developed HCP, which addresses the potential impacts of development on the Florida scrub-jay habitat and prescribes various measures for protection and mitigation.

20.    The County's Florida scrub-jay HCP is implemented by County Ordinance No. 2015-003, §1, 2-10-15.

21.    Property owners subject to the conditions of the HCP must apply and pay the pertinent HCP Development Fee ("Scrub-jay Fee") as detailed in the County's HCP Development Fee Schedule ("Fee Schedule").

22.    The County uses the Scrub-jay Fees to fund implementation of the HCP, including land acquisition and reserve development; habitat assessment, planning and restoration; habitat management and maintenance; monitoring and adaptive management; changed circumstances; and plan administration.

23.    The current Fee Schedule, which became effective in January of 2023, is a tiered system based on the total acreage of the parcel as it was originally platted.



24.    The County provides no mechanism by which a landowner could seek an individualized determination of how much Florida scrub-jay habitat, if any, exists on a property or would be impacted by any planned development.

25.    The County Ordinance and the County's website indicate that Charlotte County landowners may seek an individual ITP directly from USFWS.

26.    But in a September 19, 2019, letter from Roxanna Hinzman, Field Supervisor for the South Florida Ecological Services Office for United States Fish and Wildlife Service (USFWS), to Tina Powell, the Parks and Natural Resources Manager for Charlotte County, USFWS stated that it would no longer consider individual requests for a Florida Jay Incidental Take Permit (ITP) or for a "release" from the Charlotte County Habitat Conservation Plan (HCP). Exhibit A.

27.    This was confirmed in a January 18, 2024, email to Mr. Colosi from Elizabeth Landrum, Fish and Wildlife Biologist for the USFWS Florida Ecological Services Field Office, explaining that "[l]egally, [USFWS] can't issue an [individual ITP] that would undermine the County's ability to fulfill the terms of their existing [HCP]" and that "[USFWS] can't issue a release letter for your property regardless of the results of any environmental survey." Exhibit B.

28.    This was also confirmed in a January 19, 2024, email to Mr. Colosi from Jamie Scudera, the Projects Manager for Charlotte County Community services, in which she stated that "[USFWS] has taken the stance they will not review parcels in our county since they issued us a county wide take permit. *Your only other option would be not to buy anything in a scrub jay area because there is no other alternative besides our plan at this time.*" Exhibit C (emphasis added).

8

29.    The above correspondences together show that the only avenue available for Mr. Colosi to develop his property is to first apply to the County for inclusion in the County's ITP and HCP.

### Mr. Colosi's Property

30.    In March of 2024, Mr. Colosi purchased a vacant 5.07-acre parcel at 18151 Bending Willow Court, Punta Gorda, Florida, in Charlotte County ("Property"). The Property is in the Prairie Creek Park subdivision.

31.    The Property is also located within the Florida scrub-jay permit boundary and is subject to the conditions of the ITP and HCP.

32.    Mr. Colosi plans to build a single-family home with a detached garage on the Property. He does not plan to clear and develop more than 2 acres of his property (and likely considerably less). He wants to maintain the natural and private environment that the trees and foliage provide.

33.    Mr. Colosi believes that substantial portions of the Property are not suitable Florida scrub-jay habitat, because there are several tall pines (which serve as predatory perches) and abundant dense saw palmetto on the Property.

34.    Mr. Colosi also believes that, even if he were to develop a full 2-acre portion of the Property, the impacted area of Florida scrub-jay habitat, if any, would be significantly smaller.

35.    To receive permission from the County to build a home, Mr. Colosi must apply to join the County's ITP and HCP for the Florida scrub-jay and obtain tree clearing and building permits.

36.    The cost for inclusion of Mr. Colosi's 5.07-acre Property into the County's ITP and HCP is the $118,527 Scrub-jay Fee. This fee applies regardless of how much of the Property would be affected by the development of his home.

37.    If the Property were just 0.07 acres smaller, the applicable Scrub-jay Fee would be $52,696.

38.    The Scrub-jay Fee is mandatory and neither the County's ordinance nor the County's HCP provide any mechanism by which Mr. Colosi may appeal to eliminate or reduce the Scrub-jay Fee.

39.    In addition to paying the Fee, Mr. Colosi must adhere to other requirements of the HCP, including not clearing during Florida scrub-jay nesting season (March 1 through June 30) and planting native scrub oaks on the property.

40.    On August 26, 2024, Mr. Colosi submitted via email to Jamie Scudera, Projects Manager for Charlotte County Community Services, a completed Florida scrub-jay HCP Application as the first step towards realizing his plans. Exhibit D.

41.    On the Application, Mr. Colosi crossed out a declaration that erroneously suggests that the County's HCP is merely voluntary and that a landowner may seek an individual ITP from USFWS. *Id.* As explained above in paragraphs 25–29, that is plainly contradicted by statements from the USFWS and the County.

42.    In response, Ms. Scudera stated that the HCP Application would only be considered with a building permit, but that if Mr. Colosi did not "meet all of [the] requirements" of the HCP, his building permit would be rejected. Exhibit E.

43.    And, despite her statement to Mr. Colosi eight months earlier that "there is no other alternative besides [the County's HCP] at this time," Ms. Scudera erroneously suggested that Mr. Colosi retains the right to pursue an individual ITP with USFWS. *Id.*

44.    In addition to disputing the HCP Application's statement that the County's HCP is voluntary, Mr. Colosi protests the mandatory application of the Fee to the Property because it is an unconstitutional condition on his right to use and develop his property.

## FIRST CLAIM FOR RELIEF
### Unconstitutional Condition
### (U.S. Const. Amends. V & XIV and 42 U.S.C. § 1983)

45.    Paragraphs 1–44 are realleged and incorporated herein by reference.

46.    This claim is against the County and pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

47.    The U.S. Constitution places the burden on the County to make an individualized determination that a permit exaction bears an essential nexus and rough proportionality to the public impacts caused by the proposed project. If no such finding is or can be made, the exaction violates the unconstitutional conditions doctrine.

48.    Here, the County must demonstrate that there is an essential nexus and a rough proportionality between Mr. Colosi's planned construction of a single-family home on a portion of his property and the demand for the $118,527 Scrub-jay Fee, which allegedly serves to mitigate the impacts to the bird's habitat caused by the construction of Mr. Colosi's home.

49.    There is no essential nexus between the $118,527 Scrub-jay Fee and Mr. Colosi's planned development because the County has not made, and will never make, an individualized determination that any existing Florida scrub-jay habitat would be impacted by Mr. Colosi's planned development.

50.    There is not even rough proportionality between the $118,527 Scrub-jay Fee and Mr. Colosi's planned development, because the Scrub-jay Fee is tied to the overall size of the Property, including the portion he is not planning to develop, without a showing that Florida scrub-jays actually inhabit any portion of Mr. Colosi's property.

51.    Because the Scrub-jay Fee bears no essential nexus or rough proportionality to Mr. Colosi's planned development, the Scrub-jay Fee as applied to his property is unconstitutional.

52.    Mr. Colosi would readily comply with virtually all the requirements of the County's HCP, including performing no clearing activities during Florida scrub-jay nesting season, and planting new scrub oaks where appropriate.

53.    Mr. Colosi refuses to comply with one mandatory term of the HCP—He will not pay the County an unconstitutional Scrub-jay Fee.

54.    Because Mr. Colosi will not agree to the HCP's requirement that he pay an unconstitutional Scrub-jay Fee, the County will not approve his Scrub-jay HCP Application or any clearing or building permits for the Property.

55.    The County's refusal to approve Mr. Colosi's Scrub-jay HCP Application or any clearing or building permits based on its improper demand for an unconstitutional condition is a violation of the Fifth Amendment Takings Clause as incorporated by the Fourteenth Amendment of the United States Constitution.

## SECOND CLAIM FOR RELIEF
### Unconstitutional Final Agency Action
### (5 U.S.C. § 706)

56.    Paragraphs 1–44 are realleged and incorporated herein by reference.

57.    This claim is against USFWS, Director, Regional Director, Department, and Secretary (collectively, "Federal Defendants").

58.    Under the Administrative Procedure Act, an agency action, finding, or conclusion is invalid if (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (b) contrary to any constitutional right, power, privilege, or immunity; (c) inconsistent with any statute; (d) adopted without compliance with required procedures; (e) unsupported by substantial evidence; or (f) unwarranted by the facts (if reviewed de novo). 5 U.S.C. § 706.

59.    An agency action that would extend an act of Congress beyond Congress' enumerated powers is contrary to a constitutional right, power, privilege, or immunity and not in accordance with law.

60.    The United States Constitution grants Congress the power to regulate commerce among the several states.

61.    The United States Constitution also grants Congress the power to enact laws that are Necessary and Proper for carrying into execution those enumerated powers.

62.    Pursuant to the Commerce and Necessary and Proper Clauses, Congress may regulate economic activities that substantially affect interstate commerce. Congress may also regulate noneconomic activities if such regulation is necessary to vindicate an otherwise valid comprehensive economic regulatory scheme.

63.    Pursuant to the ESA, USFWS has classified the Florida scrub-jay as a threatened species. Also under the ESA's aegis, the Service has generally prohibited the take of the Florida scrub-jay wherever found, including nonfederal property.

64.    The Florida scrub-jay is found only within the state of Florida.

65.    The Florida scrub-jay has no commercial or economic value. USFWS has not made any findings that take of the Florida scrub-jay substantially affects interstate commerce.

66.    The take of the Florida scrub-jay does not substantially affect interstate commerce.

67.    Takes of the Florida scrub-jay, aggregated to include the entire species, do not substantially affect interstate commerce.

68.    The take of the Florida scrub-jay is categorically noneconomic activity.

69.    The ESA is not a comprehensive economic regulatory scheme. The inability to regulate the Florida scrub-jay would not frustrate USFWS's ability

to regulate the take of commercially valuable species or species within the channels of commerce. Thus, the regulation of take of the Florida scrub-jay is unnecessary to vindicate any comprehensive economic regulatory scheme.

70.    No enumerated power supports the regulation of the take of the Florida scrub-jay on nonfederal land.

71.    Regulation of the take of the Florida scrub-jay on nonfederal land is neither necessary nor proper to exercise any power of the federal government.

72.    Therefore, regulation of the take of the Florida scrub-jay on nonfederal land is contrary to a constitutional right, power, privilege, or immunity, 5 U.S.C. § 706(2)(B), as well as arbitrary, capricious, and contrary to law, 5 U.S.C. § 706(2)(A). USFWS has no authority to require landowners to obtain a permit or satisfy any other conditions, before engaging in activity that takes, or may result in the incidental take, of the Florida scrub-jay.

**THIRD CLAIM FOR RELIEF**
**Executive Action in Excess of**
**Congress' Enumerated Powers**
**(U.S. Const. Art. I, § 8)**

73.    Paragraphs 1–44 are realleged and incorporated herein by reference.

74.    This claim is against the Federal Defendants.

75.     The United States Constitution grants Congress specific, limited, and enumerated power to regulate commerce among the several states.

76.     The United States Constitution also grants Congress the power to enact laws that are Necessary and Proper for carrying into execution those enumerated powers.

77.     Pursuant to current Commerce Clause doctrine, Congress may regulate economic activities that substantially affect interstate commerce. Congress may also regulate noneconomic activities if such regulation is necessary to vindicate an otherwise valid comprehensive economic regulatory scheme.

78.     Pursuant to the ESA, USFWS has classified the Florida scrub-jay as a threatened species. Also under the ESA's aegis, the Service has generally prohibited the take of the Florida scrub-jay wherever found, including nonfederal property.

79.     The Florida scrub-jay is found only within the state of Florida.

80.     The Florida scrub-jay has no commercial or economic value. USFWS has not made any findings that take of the Florida scrub-jay substantially affects interstate commerce.

81.     The take of the Florida scrub-jay does not substantially affect interstate commerce.

82.    Takes of the Florida scrub-jay, aggregated to include the entire species, do not substantially affect interstate commerce.

83.    The take of the Florida scrub-jay is categorically noneconomic activity.

84.    The ESA is not a comprehensive economic regulatory scheme. The inability to regulate the Florida scrub-jay would not frustrate USFWS's ability to regulate the take of commercially valuable species or species within the channels of commerce. Thus, the regulation of take of the Florida scrub-jay unnecessary to vindicate any comprehensive economic regulatory scheme.

85.    No enumerated power supports the regulation of the take of the Florida scrub-jay on nonfederal land.

86.    Regulation of the take of the Florida scrub-jay on nonfederal land is neither necessary nor proper to exercise any power of the federal government.

87.    Therefore, the prohibition of the take of the Florida scrub-jay exceeds Congress' power under U.S. Const. art. I, § 8, and is unconstitutional.

## PRAYER FOR RELIEF

For the violations above, Mr. Colosi respectfully requests the following relief:

1. A declaration as to the County that the County's $118,527 Florida scrub-jay development fee as applied to Mr. Colosi's property is an unconstitutional condition on the use of his property in violation of the

Fifth Amendment as incorporated by the Fourteenth Amendment to the United States Constitution.

2. An injunction against the County preventing enforcement of the County's Fee Schedule as applied to Mr. Colosi's property.

3. Award Plaintiff his costs, attorney's fees, and other expenses in accordance with law, including 42 U.S.C. § 1983;

4. A declaration as to the Federal Defendants that the USFWS regulation prohibiting take of the Florida scrub-jay on nonfederal land is invalid under the Administrative Procedure Act, 5 U.S.C. § 706, because it is inconsistent with constitutional right, power, privilege, or immunity and not in accordance with law;

5. Vacatur of 52 Fed. Reg. 20,715 pursuant to 5 U.S.C. § 706.

6. A declaration as to the Federal Defendants that the USFWS regulation prohibiting take of the Florida scrub-jay is an invalid exercise of power under the United States Constitution, and that USFWS is without authority to prohibit the take of the Florida scrub-jay on nonfederal land;

7. A permanent injunction against the Federal Defendants preventing USFWS from enforcing the regulation prohibiting take of the Florida scrub-jay on nonfederal land; and

8. Any other relief the Court deems just and proper.

DATED: October 29, 2024.

Respectfully submitted,

/s/ Johanna B. Talcott
Johanna B. Talcott, Fla. Bar No. 1008094
Mark Miller, Fla. Bar No. 0094961
Pacific Legal Foundation
4440 PGA Blvd., Suite 307
Palm Beach Gardens, Florida 33410
Telephone: (561) 691-5000
mark@pacificlegal.org
jotalcott@pacificlegal.org

Frank D. Garrison, Ind. Bar No. 34024-49*
Pacific Legal Foundation
3100 Clarendon Boulevard, Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
fgarrison@pacificlegal.org

*Counsel for Plaintiff*
*\*Motion for Special Admission forthcoming*

20

**<u>VERIFICATION</u>**

I, MICHAEL COLOSI, declare under penalty of perjury pursuant to the laws of Florida that the foregoing is true and correct,

DATED: October 29, 2024.

By: <u>/s/ *Michael Colosi*</u>
Michael Colosi