UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| MICHAEL COLOSI,<br><br>       Plaintiff,<br><br>   v.<br><br>CHARLOTTE COUNTY, FLORIDA;<br>UNITED STATES FISH AND<br>WILDLIFE SERVICE; PAUL SOUZA,<br>in his official capacity as Acting Director<br>of the United States Fish and Wildlife<br>Service; MIKE OETKER, in his official<br>capacity as Regional Director of the<br>United States Fish and Wildlife Service<br>Southeast Region; UNITED STATES<br>DEPARTMENT OF THE INTERIOR;<br>and WALTER CRUICKSHANK, in his<br>official capacity as Acting Secretary of<br>the Interior,<br><br>       Defendants. | Case No. 2:24-CV-1004-JES-KCD<br><br>**CONSERVATION GROUPS'<br>MOTION TO INTERVENE AS<br>DEFENDANTS** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................... ii

INTRODUCTION ................................................................................ 1

BACKGROUND.................................................................................. 2

    I.    The Florida Scrub-Jay.............................................................. 2

    II.   The Endangered Species Act ................................................... 4

    III.  The Charlotte County Habitat Conservation Plan ................... 6

    IV.  This Lawsuit ........................................................................ 7

    V.   Conservation Groups............................................................ 8

ARGUMENT...................................................................................... 9

    I.    Conservation Groups are entitled to intervene as of right. ...... 9

        A.   Conservation Groups' motion is timely. ..................... 10

        B.   Conservation Groups have a substantial interest in the continued protection of the Florida Scrub-Jay. ............ 12

        C.   The disposition of this case may impair Conservation Groups' ability to protect their interests. .................... 17

        D.   Conservation Groups' interests are not adequately represented by any existing party. ................................ 19

    II.   Alternatively, the Court should grant permissive intervention................ 22

CONCLUSION ................................................................................ 25

LOCAL RULE 3.01(g) CERTIFICATION........................................... 25

# TABLE OF AUTHORITIES

## CASES

*Ass'n of Conn. Lobbyists LLC v. Garfield*,
241 F.R.D. 100 (D. Conn. 2007) ............................................................... 24–25

*Babbitt v. Sweet Home Chapter of Cmties. for a Great Or.*,
515 U.S. 687 (1995) ......................................................................................... 5

*Chiles v. Thornburgh*,
865 F.2d 1197 (11th Cir. 1989) ................................................................... 9, 12

*Clark v. Putnam Cnty.*,
168 F.3d 458 (11th Cir. 1999) ......................................................................... 19

*Coastal Conservation Ass'n v. Locke*,
No. 2:09-CV-641-FtM-29SPC, 2010 WL 1407680 (M.D. Fla. Apr. 6,
2010)....................................................................................................... 20, 22

*Dillard v. Chilton Cnty. Comm'n*,
495 F.3d 1324 (11th Cir. 2007) ......................................................................... 9

*Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*,
983 F.2d 211 (11th Cir. 1993) ......................................................................... 10

*Fla. Wildlife Fed'n, Inc. v. Johnson*,
No. 4:08CV324-RH/WCS, 2009 WL 248078 (N.D. Fla. Feb. 2,
2009).......................................................................................................... 22

*Florida v. Becerra*,
No. 8:21-CV-839-SDM-AAS, 2021 WL 3209861 (M.D. Fla. July 29,
2021).......................................................................................................... 17

*Friends of the Everglades, Inc. v. S. Fla. Water Mgmt. Dist.*,
No. 02-80309-CIV-ALTONAGA/Turnoff, 2005 WL 8156105 (S.D.
Fla. Nov. 29, 2005).................................................................................... 15

*Georgia v. U.S. Army Corps of Eng'rs*,
302 F.3d 1242 (11th Cir. 2002).............................................................. 11–12, 21

*Gibbs v. Babbitt*,
214 F.3d 483 (4th Cir. 2000) ........................................................................... 23

*Huff v. Comm'r of IRS*,
743 F.3d 790 (11th Cir. 2014).......................................................................... 17

*Loyd v. Ala. Dep't of Corr.*,
176 F.3d 1336 (11th Cir. 1999)......................................................................... 10

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......................................................................................... 15

*Meek v. Metro. Dade Cnty., Fla.*,
985 F.2d 1471 (11th Cir. 1993) (*abrogated on other grounds by United
States v. US Stem Cell Clinic, LLC*, 987 F.3d 1021 (11th Cir. 2021)) ............... 11, 19

*Miccosukee Tribe of Indians of Fla. v. United States*,
No. 05-23045-CIV, 2006 WL 8432717 (S.D. Fla. May 15, 2006) ...... 16–17, 18–19

*Mille Lacs Band of Chippewa Indians v. State of Minn.*,
989 F.2d 994 (8th Cir. 1993) ......................................................................... 21–22

*Nat. Res. Def. Council, Inc. v. Tenn. Valley Auth.*,
340 F. Supp. 400 (S.D.N.Y. 1971), *rev'd on other grounds*, 459 F.2d
255 (2d Cir. 1972)............................................................................................. 24

*Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior, Nat'l Park Serv.*,
No. 2:11-CV-578-FtM-29SPC, 2012 WL 1060144 (M.D. Fla. Mar.
29, 2012) ............................................................................................. 15, 16, 18

*Retina-X Studios, LLC v. ADVAA, LLC*,
303 F.R.D. 642 (M.D. Fla. 2014) .................................................................... 10

*S. Dade Land Corp. v. Sullivan*,
155 F.R.D. 694 (S.D. Fla. 1994).................................................................. 15, 16

*Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*,
861 F.3d 1278 (11th Cir. 2017)........................................................................ 17

*Sierra Club v. Espy*,
18 F.3d 1202 (5th Cir. 1994) .......................................................................... 21

*Spangler v. Pasadena City Bd. of Ed.*,
552 F.2d 1326 (9th Cir. 1977)......................................................................... 24

*Stone v. First Union Corp.*,
371 F.3d 1305 (11th Cir. 2004).................................................... 10, 17, 18, 19

*Tenn. Valley Auth. v. Hill,*
    437 U.S. 153 (1978) ............................................................................ 4

*Trbovich v. United Mine Workers of Am.,*
    404 U.S. 528 (1972) .................................................................... 19, 20

*Utah Ass'n of Ctys. v. Clinton,*
    255 F.3d 1246 (10th Cir. 2001) ...................................................... 20

*Wildlife Conservation Fund of Am. v. Babbitt,*
    No. 2:01-cv-25-FtM-29DNF (M.D. Fla. Mar. 14, 2001) .................................. 18

*Worlds v. Dept. of Health and Rehabilitative Servs.,*
    929 F.2d 591 (11th Cir. 1991) ........................................................ 10

## STATUTES

16 U.S.C. § 1531(a)(2)–(b) ............................................................... 4

16 U.S.C. § 1532(6) ........................................................................ 5

16 U.S.C. § 1532(19) ...................................................................... 5

16 U.S.C. § 1532(20) ...................................................................... 5

16 U.S.C. § 1533 .......................................................................... 5

16 U.S.C. § 1533(c) ....................................................................... 5

16 U.S.C. § 1533(d) ....................................................................... 5

16 U.S.C. § 1538(a)(1)(B) ................................................................. 5

16 U.S.C. § 1539(a)(1)(B) ................................................................. 5

16 U.S.C. § 1539(a)(2)(A) ................................................................. 6

16 U.S.C. § 1539(a)(2)(B) ................................................................. 6

## REGULATIONS AND ADMINISTRATIVE MATERIALS

50 C.F.R. § 17.3 ............................................................................................ 5

50 C.F.R. § 17.21(c) ...................................................................................... 5

50 C.F.R. § 17.31(a) ...................................................................................... 5

52 Fed. Reg. 20,715 (June 3, 1987).............................................................. 4

## OTHER AUTHORITIES

Archbold, *Long-term Florida Scrub-Jay Project* (Jan. 27, 2025),
https://www.archbold-station.org/projects/long-term-florida-scrub-jay-project/ ...................................................................................... 24

Charlotte County Parks & Natural Resources Division et al., *Charlotte County: County-wide Florida Scrub-Jay* (Aphelocoma coerulescens) *Habitat Conservation Plan* (2013) .................................................. 3, 6, 7

Fla. Fish & Wildlife Conservation Comm'n, *The 2011 Economic Benefits of Wildlife Viewing in Florida* (2013)................................................. 23

John W. Fitzpatrick & Reed Bowman, *Florida Scrub-Jays: Oversized Territories and Group Defense in a Fire-Maintained Habitat, in* COOPERATIVE BREEDING IN VERTEBRATES (Janis L. Dickinson & Walter D. Koenig, eds., Cambridge Univ. Press 2016) ................................... 2, 3

Kathryn E. Arnold & Ian P.F. Owens, *Cooperative Breeding in Birds: The Role of Ecology* (1999).......................................................................... 3

U.S. Fish & Wildlife Serv.*, Federal Fish and Wildlife Permit* (Dec. 12, 2014)................................................................................................... 6, 7

U.S. Fish & Wildlife Serv. & Nat'l Marine Fisheries Serv., *Habitat Conservation Planning and Incidental Take Permit Processing Handbook* (2016) ............................................................................... 6

U.S. Fish & Wildlife Serv., *Species Status Assessment: Florida Scrub-Jay* (Aphelocoma coerulescens) (2019) ................................................. 3, 4

## INTRODUCTION

Florida Wildlife Federation, Environmental Confederation of Southwest Florida, American Bird Conservancy, and Center for Biological Diversity (collectively, "Conservation Groups") seek to intervene as defendants under Federal Rule of Civil Procedure 24(a) to safeguard their substantial interests in the fate of the rare and imperiled Florida Scrub-Jay.

This lawsuit seeks to remove the Florida Scrub-Jay from the federal Endangered Species List and eliminate vital protections for the species under both the federal Endangered Species Act and a county-wide Habitat Conservation Plan. Conservation Groups have a substantial interest in seeing these important legal protections endure. Conservation Groups' members derive significant benefits and enjoyment from this species and hope to do so into the future. And Conservation Groups have advocated for the protection of this rare species and its habitat for years. Accordingly, this case substantially implicates and threatens the Conservation Groups' interests.

The Florida Scrub-Jay is the only bird species found exclusively within the state of Florida. This bold, blue-and-gray jay is highly social, relying on close family groups to raise its young and often engaging inquisitively with bird watchers who seek it out in its dwindling oak scrub habitat. In 1987, the Scrub-Jay was listed as "threatened" under the Endangered Species Act due to the widespread destruction of its unique habitat caused by unchecked human development. The Endangered Species Act listing, and the protections and habitat conservation plans that have

flowed from that listing—including the Charlotte County Habitat Conservation Plan under challenge in this case—have forestalled the immediate threat of the Scrub-Jay's extinction, but the species' circumstances remain dire.

Because Conservation Groups have a direct and legally cognizable interest in the Scrub-Jay protections challenged in this proceeding; their interests will not be adequately represented by any existing party; and they meet the other requisite elements of intervention under Rule 24(a), Conservation Groups' intervention as of right should be granted. In the alternative, Conservation Groups request permissive intervention under Federal Rule of Civil Procedure 24(b).[1]

## BACKGROUND

### I. The Florida Scrub-Jay

The Florida Scrub-Jay (*Apelocoma coerulescens*) (the "Scrub-Jay") is the only bird species that exists solely within the State of Florida. Non-migratory and territorial, the Scrub-Jay has evolved traits uniquely suited to its peninsular Florida habitat since it became isolated from other North American scrub-jay populations several million years ago.[2] Most notably, because the Florida peninsula receives the

---

[1] This Motion is supported by the accompanying declarations of Ayech, Bennett, Driest, Gledhill, Gyllenhaal, Hale, Handy, Hartl, Klowden, Lebbin, and Wilson. Pursuant to Federal Rule of Civil Procedure 24(c), Conservation Groups also file concurrently with this Motion a Proposed Answer to Plaintiff's Complaint.

[2] *See* John W. Fitzpatrick & Reed Bowman, *Florida Scrub-Jays: Oversized Territories and Group Defense in a Fire-Maintained Habitat*, *in* COOPERATIVE BREEDING IN VERTEBRATES 77, 78 (Janis L. Dickinson & Walter D. Koenig, eds., Cambridge Univ. Press 2016), https://doi.org/10.1017/CBO9781107338357.006 (excerpts attached as Exhibit A to Morrison Decl.).

highest frequency of lightning strikes on the continent, the Scrub-Jay has evolved to require habitat consisting of scrub oaks kept short and interspersed with many openings due to frequent lightning-induced fire.[3] This oak scrub habitat occurs on sand dunes and ridges that mark ancient shorelines.[4] The Florida Scrub-Jay has also evolved to engage in the rare (among birds) practice of cooperative breeding, with young Scrub-Jays remaining in their natal territory into adulthood to assist with the rearing of the next generation of young and other group activities.[5, 6]



As agricultural and residential development in Florida accelerated in the 1960s to meet a human population boom, Scrub-Jay habitat destruction and degradation accelerated—leading the U.S. Fish and Wildlife Service (the "Service") to list the

---

[3] *See* U.S. Fish & Wildlife Serv., *Species Status Assessment: Florida Scrub-Jay* (Aphelocoma coerulescens) 29 (2019), https://ecos.fws.gov/ServCat/DownloadFile/170166 ("Species Status Assessment") (excerpts attached as Exhibit B to Morrison Decl.).

[4] *See* Fitzpatrick & Bowman, *supra* note 2 (Ex. A to Morrison Decl.), at 78.

[5] *See* Charlotte County Parks & Natural Resources Division et al., *Charlotte County: County-wide Florida Scrub-Jay* (Aphelocoma coerulescens) *Habitat Conservation Plan* 18 (2013), https://www.charlottecountyfl.gov/file/409/charlotte-county-hcp-final.pdf ("Charlotte County HCP") (excerpts attached as Exhibit C to Morrison Decl.); Fitzpatrick & Bowman, *supra* note 2 (Ex. A to Morrison Decl.), at 78; Kathryn E. Arnold & Ian P. F. Owens, *Cooperative Breeding in Birds: The Role of Ecology*, 10 Behavioral Ecology 465 (1999), https://doi.org/10.1093/beheco/10.5.465 (excerpts attached as Exhibit D to Morrison Decl.).

[6] Florida Scrub-Jay photograph, taken by Anders Gyllenhaal. *See* Gyllenhaal Decl. ¶ 8.

Scrub-Jay as "threatened" under the ESA in 1987. *See* Endangered and Threatened Wildlife and Plants; Threatened Status for the Florida Scrub-Jay, 52 Fed. Reg. 20,715 (June 3, 1987). Developers specifically value the well-drained high ground that makes up Florida Scrub-Jay habitat.[7] Human development in Florida has also made it significantly harder for wildlife managers to conduct prescribed burns to mimic the historical effects of wildfire, which is required to maintain the oak scrub habitat necessary for the Scrub-Jay's survival.[8] Despite conservation efforts, the Florida Scrub-Jay population has continued to decline since the species was listed, culminating in an estimated 90 percent drop from its pre-European settlement size.[9]

## II.    The Endangered Species Act

In 1973, recognizing that certain wildlife species "ha[d] been so depleted in numbers that they [we]re in danger of or threatened with extinction," Congress passed the Endangered Species Act ("ESA" or the "Act"), "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(a)(2)–(b). Over fifty years since its passage, the ESA remains "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978).

---

[7] *See* Species Status Assessment, *supra* note 3 (Ex. B to Morrison Decl.), at 29.

[8] *See id.* at 17–19.

[9] *See id.* at 21.

To afford a terrestrial species the protections of the ESA, the Secretary of Interior, acting through the Service, must first list the species as either "endangered" or "threatened" under section 4 of the ESA. *See* 16 U.S.C. § 1533. A species is "endangered" when it "is in danger of extinction throughout all or a significant portion of its range," *id.* § 1532(6), while a species is "threatened" when it is "likely to become an endangered species within the foreseeable future," *id.* § 1532(20); *see also id.* § 1533(c).

The ESA generally prohibits the "take" of listed species. *Id.* § 1538(a)(1)(B), 50 C.F.R. § 17.21(c) (endangered species); 16 U.S.C. § 1533(d), 50 C.F.R. § 17.31(a) (threatened species). To "take" a listed species is "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect" it, "or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). "Harm" in this definition of take "may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 50 C.F.R. § 17.3; *see Babbitt v. Sweet Home Chapter of Cmties. for a Great Or.*, 515 U.S. 687, 696–708 (1995) (upholding "harm" definition to include significant habitat degradation).

Notwithstanding this prohibition, the Service may issue permits for the take of listed species "if such taking is incidental to, and not the purpose of, the carrying out of an otherwise lawful activity." 16 U.S.C. § 1539(a)(1)(B). These "incidental take permits" cannot be issued unless the permit applicant has submitted to the Service a "conservation plan" that specifies, among other things, the impact of the planned

5

taking, the planned steps to minimize and mitigate those impacts and the available funding to take those steps, and the considered alternatives to the taking. *Id.* § 1539(a)(2)(A). Where the "take" consists of habitat destruction, mitigation can take the form of the purchase of conservation credits that allow for the acquisition and preservation of suitable habitat elsewhere.[10] The Service may issue an incidental take permit only if it finds that the applicant will minimize and mitigate the impacts of the incidental take "to the maximum extent practicable"; that there is adequate funding for the habitat conservation plan; and that the taking "will not appreciably reduce the likelihood of the survival and recovery of the species in the wild." *Id.* § 1539(a)(2)(B).

### III.    The Charlotte County Habitat Conservation Plan

Thousands of acres of Florida Scrub-Jay habitat lie within the borders of Defendant Charlotte County.[11] Recognizing that obtaining individual incidental take permits from the Service was time-consuming, costly, and uncertain for property owners seeking to build on land within this habitat, Charlotte County developed a county-wide habitat conservation plan (the "Charlotte County HCP" or the "Plan") and applied for a county-wide incidental take permit for the Florida Scrub-Jay, which the Service granted in 2014.[12] The Plan allows property owners within the

---

[10] *See* U.S. Fish & Wildlife Serv. & Nat'l Marine Fisheries Serv., *Habitat Conservation Planning and Incidental Take Permit Processing Handbook* 9-20–22 (2016), https://www.fws.gov/sites/default/files/documents/habitat-conservation-planning-handbook-entire_0.pdf (excerpts attached as Exhibit E to Morrison Decl.).

[11] *See* Charlotte County HCP, *supra* note 5 (Ex. C to Morrison Decl.), at 7.

[12] *See id.* at 7; *see also* U.S. Fish & Wildlife Serv., *Federal Fish and Wildlife Permit* 1 (Dec. 12, 2014), *available at* https://www.charlottecountyfl.gov/file/409/Incidental-Take-Permit.pdf ("Charlotte County ITP") (attached as Exhibit F to Morrison Decl.).

Plan's coverage area to receive incidental take permission for Florida Scrub-Jays under the ESA by paying a mitigation fee based on the size of their lot and complying with certain pre-set requirements.[13] Charlotte County uses the collected mitigation fees to purchase land in the eastern portion of Charlotte County that will connect two existing County preserves, creating a much larger, contiguous preserve that would be managed to provide optimal Scrub-Jay habitat and thus mitigate the loss of suitable habitat caused by development elsewhere within the Charlotte County HCP's coverage area.[14]

## IV.    This Lawsuit

Plaintiff Michael Colosi filed this lawsuit against the Service and other federal agencies ("Federal Defendants"), as well as Charlotte County, in October 2024. *See* Compl., ECF No. 1. According to his Complaint, in March 2024, Plaintiff purchased an undeveloped lot in Charlotte County's Prairie Creek Park subdivision. *See id.* ¶ 30. The lot is within the Charlotte County HCP's coverage area, but Mr. Colosi objected to paying the County's mitigation fee. *See id.* ¶ 53. Instead, Plaintiff claims that the Charlotte County HCP's fee schedule is unconstitutional because it violates the Takings Clause, and that the listing and resulting protection of the Florida Scrub-Jay under the ESA is unconstitutional under the Commerce Clause and violative of the

---

[13] *See* Charlotte County HCP, *supra* note 5 (Ex. C to Morrison Decl.), at 54–55, 77; *see also, e.g.*, Charlotte County ITP, *supra* note 12 (Ex. F to Morrison Decl.), at 2 (property owner permittees shall "avoid[] land clearance activities during the Florida scrub-jay nesting season, March 1 through June 30").

[14] *See* Charlotte County HCP, *supra* note 5 (Ex. C to Morrison Decl.), at 55–58, 77.

Administrative Procedure Act because the Florida Scrub-Jay lives only in Florida and allegedly has no substantial effect on interstate commerce. *See id.* ¶¶ 54–55, 64–72, 79–87.

## V.    Conservation Groups

Conservation Groups are non-profit environmental advocacy organizations dedicated to the protection of rare and threatened wildlife species, including the Florida Scrub-Jay and its habitat. Conservation Groups and their members have direct and legally protectible interests in the outcome of this case.

Florida Wildlife Federation is a non-profit corporation focused on the conservation of Florida's wildlife and its habitat and other natural resources, with over 9,000 members throughout Florida. Gledhill Decl. ¶ 3. The Environmental Confederation of Southwest Florida is a non-profit collective of organizations and individuals devoted to conservation of the flora, fauna, and other natural resources of Southwest Florida. Ayech Decl. ¶¶ 3–4. The American Bird Conservancy is a non-profit corporation whose mission is to conserve wild birds and their habitats throughout the Americas, with over 31,000 members, including more than 1,000 in Florida. Lebbin Decl. ¶ 3. The Center for Biological Diversity is a non-profit corporation dedicated to the preservation and restoration of biodiversity, public lands and water, and public health through science, policy, and environmental law, with over 79,000 active members across the United States, including more than 4,000 in Florida. Hartl Decl. ¶¶ 5–6.

Conservation Groups and their members have recreational, aesthetic, scientific, conservation, and economic interests in the Florida Scrub-Jay. *See* Ayech Decl. ¶¶ 5–12; Bennett Decl. ¶¶ 10–16, 19–20; Driest Decl. ¶¶ 10–11; Gledhill Decl. ¶¶ 8–13; Gyllenhaal Decl. ¶¶ 5–9; Hale Decl. ¶¶ 6–14; Handy Decl. ¶¶ 4, 7, 9–10; Hartl Decl. ¶¶ 6–9, 11–14; Klowden Decl. ¶¶ 4, 11–14; Lebbin Decl. ¶¶ 7–8, 14–20; Wilson Decl. ¶¶ 4–8. To protect those interests, they now seek to intervene as defendants in this action.

## ARGUMENT

Conservation Groups' intervention motion should be granted. Conservation Groups hold interests in the Florida Scrub-Jay that are threatened by Plaintiff's lawsuit and are not represented by any other party to this case. They seek a voice in this proceeding to ensure that this Court is fully informed regarding the legitimacy of the Scrub-Jay protections at issue. Given the significant impact that this case could have on Conservation Groups' substantial and unrepresented interests in the protection and recovery of the Florida Scrub-Jay, this Court should grant Conservation Groups' intervention request.[15]

## I.    Conservation Groups are entitled to intervene as of right.

Conservation Groups satisfy the requirements to intervene as of right. Under Federal Rule of Civil Procedure 24(a), a movant is entitled to intervene as of right

---

[15] Conservation Groups need not demonstrate Article III standing to intervene under Federal Rule of Civil Procedure 24 because "there exists a justiciable case or controversy between the parties already in the lawsuit." *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1336 (11th Cir. 2007) (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)).

9

when: 1) the motion to intervene is timely; 2) the movant "has an interest relating to the property or transaction which is the subject of the action"; 3) the movant is "so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest"; and 4) the movant's interest "is represented inadequately by the existing parties to the suit." *Stone v. First Union Corp.*, 371 F.3d 1305, 1308–09 (11th Cir. 2004) (quoting *Worlds v. Dept. of Health and Rehabilitative Servs.*, 929 F.2d 591, 593 (11th Cir. 1991)). "Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action." *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993); *see also Retina-X Studios, LLC v. ADVAA, LLC*, 303 F.R.D. 642, 651 (M.D. Fla. 2014). The trial court has "no discretion to deny" intervention once an intervenor applicant "establishes all prerequisites to intervention" under Rule 24(a). *Loyd v. Ala. Dep't of Corr.*, 176 F.3d 1336, 1340–41 (11th Cir. 1999). Conservation Groups satisfy each such prerequisite.

### A.    Conservation Groups' motion is timely.

Because this litigation is at an early stage and this Court has yet to issue any substantive rulings, Conservation Groups' motion to intervene is timely. Courts in this Circuit reject any "absolute measures of timeliness" in deciding a motion to intervene but instead consider "all the circumstances" surrounding the motion, including: 1) the length of time during which the prospective intervenor "actually

knew or reasonably should have known" of its interest in the litigation before it moved to intervene; 2) any prejudice that existing parties may suffer from the prospective intervenor's failure to intervene "as soon as he actually knew or reasonably should have known of his interest in the case"; 3) the prejudice that the prospective intervenor would suffer if the motion were denied, and; 4) any unusual circumstances militating for or against a determination that the motion is timely. *See Meek v. Metro. Dade Cnty., Fla.*, 985 F.2d 1471, 1478–79 (11th Cir. 1993) (internal citation omitted) (*abrogated on other grounds by United States v. US Stem Cell Clinic, LLC*, 987 F.3d 1021, 1024 (11th Cir. 2021)). The "issue of prejudice" is the "essence of the timeliness inquiry." *Id.* at 1479.

Here, Conservation Groups meet the timeliness requirement because they move to intervene just 91 days after Plaintiff filed his Complaint. Defendants have yet to file any substantive response to the Complaint, and there have been no substantive proceedings in the case generally. Hence, at this early stage, intervention would not prejudice any party. Rather, Conservation Groups will suffer prejudice should this Court deny intervention, rendering them unable to participate as parties in support of continued protections for the Florida Scrub-Jay or to appeal any adverse decision that might be issued in this case. Furthermore, there are no "unusual circumstances" that would militate against a determination that Conservation Groups' application is timely.

Conservation Groups' motion thus meets the timeliness requirement. *See, e.g.*, *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259–60 (11th Cir. 2002)

11

(intervention motion timely where filed six months after suit was filed and "the court had yet to take significant action"); *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (intervention motion timely where filed "only seven months" after complaint, three months after motion to dismiss, and "before any discovery had begun").

**B.    Conservation Groups have a substantial interest in the continued protection of the Florida Scrub-Jay.**

Conservation Groups also satisfy Rule 24(a)'s "interest" requirement because they have a direct stake in the continued protection of the Florida Scrub-Jay under the Charlotte County HCP and the ESA—the subject-matter of this litigation. To intervene under Rule 24(a), movants must show a "direct, substantial, legally protectible interest in the proceeding." *Chiles*, 865 F.2d at 1213 (internal citation omitted). This prong of the Rule 24(a) inquiry "is a flexible one, which focuses on the particular facts and circumstances surrounding each motion for intervention." *Id.* at 1214 (internal citation omitted).

Conservation Groups satisfy the interest requirement because (1) their members have recreational, aesthetic, scientific, conservation, and economic interests in the Florida Scrub-Jay and (2) as organizations, they are dedicated to and have steadfastly worked to promote the conservation of wildlife, including the Florida Scrub-Jay.

Conservation Groups' members enjoy and deeply value being able to see and experience Florida Scrub-Jays. They take trips specifically to see or photograph the

Scrub-Jay in many locations across Florida, including specifically in the Prairie Creek Preserve in Charlotte County that abuts the Prairie Creek Park subdivision where Plaintiff's property is located. *See* Klowden Decl. ¶¶ 3, 12–14 (Prairie Creek Preserve and other places); Driest Decl. ¶¶ 7, 10 (same); Ayech Decl. ¶¶ 10–12; Bennett Decl. ¶ 19; Gledhill Decl. ¶ 11; Gyllenhaal Decl. ¶¶ 6–7; Hale Decl. ¶¶ 10–12; Handy Decl. ¶ 4; Hartl Decl. ¶ 14; Klowden Decl. ¶¶ 6, 10; Lebbin Decl. ¶¶ 17, 19–20; Wilson Decl. ¶¶ 5–6. Some members also enjoy seeing Scrub-Jays while walking or driving near their own homes in Charlotte County and in the Prairie Creek Park subdivision itself. *See* Klowden Decl. ¶ 12 (Prairie Creek Park); Driest Decl. ¶ 10 (Charlotte County). Conservation Groups' members have plans to continue experiencing Florida Scrub-Jays in these and other areas into the future. *See* Ayech Decl. ¶ 10; Bennett Decl. ¶¶ 21–22; Driest Decl. ¶ 10; Gledhill Decl. ¶ 12; Gyllenhaal Decl. ¶¶ 6–7; Hale Decl. ¶ 14; Handy Decl. ¶ 4; Hartl Decl. ¶ 14; Klowden Decl. ¶ 14; Lebbin Decl. ¶ 20; Wilson Decl. ¶ 7. In all of these pursuits, Conservation Groups' members treasure the Scrub-Jay's gregariousness, intelligence, and apparent curiosity about people. *See* Bennett Decl. ¶ 19; Driest Decl. ¶¶ 4, 6; Gledhill Decl. ¶ 12; Gyllenhaal Decl. ¶ 4; Klowden Decl. ¶ 8; Lebbin Decl. ¶ 15; Wilson Decl. ¶¶ 4, 8.

Conservation Groups' members also have scientific and conservation interests in Florida Scrub-Jays. They enjoy learning about the Scrub-Jay's unique life history and evolutionary adaptations to the geography of Florida. *See* Bennett Decl. ¶ 18; Driest Decl. ¶ 11; Gledhill Decl. ¶¶ 10, 13; Gyllenhaal Decl. ¶¶ 4–5; Hale Decl. ¶ 9;

Handy Decl. ¶ 5; Klowden Decl. ¶¶ 8–10; Lebbin Decl. ¶ 15. Multiple members have studied Florida Scrub-Jays during graduate-level ecology coursework. *See* Klowden Decl. ¶ 4; Lebbin Decl. ¶ 15. And a number of members have advocated for the protection of the Scrub-Jay and its habitat in their personal time. *See* Ayech Decl. ¶¶ 5, 9; Driest Decl. ¶¶ 7–9; Gyllenhaal Decl. ¶ 5; Handy Decl. ¶ 6.

In addition, Conservation Groups' members have economic interests in the Florida Scrub-Jay's conservation and in the endurance of its protections under the ESA and the Charlotte County HCP. One member owns and runs an ecological services consultancy that drafted the Charlotte County HCP and is frequently retained by municipal clients to help them comply with Florida Scrub-Jay requirements under the Charlotte County HCP and the ESA. *See* Handy Decl. ¶¶ 7, 9–10. Another member earns his living as a fine artist specializing in depicting Florida's wildlife and wild places. Hale Decl. ¶¶ 5–6. He has painted and sold works depicting Florida Scrub-Jays and scrub habitat in the past, including a mural that includes two Florida Scrub-Jays at Shamrock Park in Sarasota County, and plans to paint more in the future. *Id.* ¶¶ 6–7, 14. And another member, who lives in the Prairie Creek Park subdivision and values the wildlife near his home that the Charlotte County HCP helps protect, fears that eliminating the HCP or the Scrub-Jay's ESA protections will not only reduce his enjoyment of his home, but will also reduce or eliminate natural amenities that add to his home's market value. Klowden Decl. ¶ 18.

14

Conservation Groups thus have a "direct, substantial, and legally protectable" interest in this proceeding. *See Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior, Nat'l Park Serv.*, No. 2:11-CV-578-FtM-29SPC, 2012 WL 1060144, at *2–*3, *4 (M.D. Fla. Mar. 29, 2012) (granting Florida Wildlife Federation's intervention where members had "substantial interests" in the litigation, including recreational use of public lands at issue and protection of endangered species); *S. Dade Land Corp. v. Sullivan*, 155 F.R.D. 694, 696 (S.D. Fla. 1994) (granting intervention to environmental groups whose members had interest in "wildlife conservation and enjoyment of the [Everglades'] natural resources"); *Friends of the Everglades, Inc. v. S. Fla. Water Mgmt. Dist.*, No. 02-80309-CIV-ALTONAGA/Turnoff, 2005 WL 8156105, at *2 (S.D. Fla. Nov. 29, 2005) (granting intervention to Miccosukee Tribe on basis of Tribal members' "recreational, conservation, scientific, aesthetic and other interests" in public lands at center of litigation); *cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562–63 (1992) (recognizing that "the desire to use or observe an animal species, even for purely [a]esthetic purposes, is undeniably a cognizable interest for purpose[s] of standing").

Conservation Groups also satisfy Rule 24(a)'s interest requirement for the independent reason that they are dedicated to conserving natural resources and wildlife, including the Florida Scrub-Jay, and to that end have advocated extensively for the protection of wild species and their habitats. Florida Wildlife Federation has worked for several decades to safeguard the Florida Scrub-Jay through advocacy to protect Scrub-Jay habitat and to support public acquisition of wildlife preserves,

among other initiatives. *See* Gledhill Decl. ¶¶ 9–13. The Environmental Confederation of Southwest Florida has advocated for the protection of species and the acquisition of conservation land across Southwest Florida and is currently planning to help fund the purchase of conservation land for Florida Scrub-Jays. *See* Ayech Decl. ¶¶ 5–6. The American Bird Conservancy has published books and reports highlighting the conservation needs of the Florida Scrub-Jay and other threatened and endangered birds, and has engaged in litigation, advocacy, and on-the-ground bird conservation work for decades. *See* Lebbin Decl. ¶¶ 5–9. The Center for Biological Diversity has worked to protect the Florida Scrub-Jay and other endemic Florida wildlife through participation in administrative rulemaking processes, litigation to protect Scrub-Jay habitat, and public outreach. *See* Bennett Decl. ¶¶ 10–16.

This significant history of advocacy on behalf of the Florida-Scrub Jay and other threatened and endangered species and their habitats further contributes to Conservation Groups' "direct, substantial, legally protectible interest" in these proceedings. *S. Dade Land Corp.*, 155 F.R.D. at 696 (finding that intervenor-applicant groups' "interest in protecting birds, other animals, and their habitats was an interest which other parties would not adequately address and which was of sufficient import to justify intervention"); *see Nat'l Parks Conservation Ass'n*, 2012 WL 1060144, at *3–*4 (acknowledging intervenor-applicant Florida Wildlife Federation's history of advocacy over public lands in dispute and organization's attendant "unique interest in the subject matter of the litigation"); *Miccosukee Tribe of Indians of Fla. v. United*

16

*States*, No. 05-23045-CIV, 2006 WL 8432717, at *1 (S.D. Fla. May 15, 2006) (granting intervention to environmental group with "direct interest in protecting the Cape Sable Seaside Sparrow from extinction"). In sum, Conservation Groups satisfy Rule 24(a)'s "interest" requirement.

### C. The disposition of this case may impair Conservation Groups' ability to protect their interests.

Conservation Groups' interests in the Florida Scrub-Jay will be impaired if Plaintiff succeeds in this lawsuit. In the Eleventh Circuit, the impairment element of Rule 24(a) requires that the litigation "as a practical matter[] may impede or impair [movant's] ability to protect [its] interest." *Stone*, 371 F.3d at 1308–09. This standard does not require intervenors to "establish that their interests *will* be impaired," but "only that the disposition of the action '*may*' impair or impede their ability to protect their interests." *Florida v. Becerra*, No. 8:21-CV-839-SDM-AAS, 2021 WL 3209861, at *2 (M.D. Fla. July 29, 2021) (internal citation omitted) (emphasis added). Put differently, if a proposed intervenor would be "practically disadvantaged by [its] exclusion from the proceedings," the standard is satisfied. *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1295 (11th Cir. 2017) (quoting *Huff v. Comm'r of IRS*, 743 F.3d 790, 800 (11th Cir. 2014)).

A ruling for the Plaintiff in this case would cause severe practical harm to Conservation Groups' interest in conserving the Florida Scrub-Jay and its habitat. Plaintiff seeks to prevent application of the Charlotte County HCP to plaintiff's property, to vacate the listing of the Florida Scrub-Jay under the ESA, and to void

17

the ESA's protections for the Florida Scrub-Jay on nonfederal lands. *See* Compl. 18–19, ECF No. 1 (request for relief). That relief would eliminate critical legal protections for the Florida Scrub-Jay, directly impairing Conservation Groups' and their members' recreational, aesthetic, conservation, financial, and other interests in the Scrub-Jay, as well as Conservation Groups' ability to protect those interests. *See supra*, Section I.B. In addition, a ruling for Plaintiff would undermine years of advocacy work by Conservation Groups to protect the Florida Scrub-Jay and its habitat, and would eliminate the most powerful legal tool Conservation Groups can rely upon in such advocacy—the ESA—at a time when the Florida Scrub-Jay population is even smaller and more imperiled than it was at the time of listing and its habitat continues to be encroached upon by development. *See* Ayech Decl. ¶¶ 5–6, 13; Bennett Decl. ¶¶ 10–16, 23; Gledhill Decl. ¶¶ 9–14; Lebbin Decl. ¶¶ 9–12, 22.[16]

Thus, this litigation "as a practical matter[] may impede or impair" Conservation Groups' "ability to protect [their] interest[s]." *Stone*, 371 F.3d at 1308–09; *see also Miccosukee Tribe*, 2006 WL 8432717, at *1 (granting intervention to environmental group where ruling for plaintiff would weaken protection for endangered species); *Nat'l Parks Conservation Ass'n*, 2012 WL 1060144, at *3 (granting intervention to environmental group where ruling for plaintiffs could impede members' access to disputed lands for recreational purposes); *see also* Order, *Wildlife Conservation Fund of Am. v. Babbitt*, No. 2:01-cv-25-FtM-29DNF (M.D. Fla. Mar. 14,

---

[16] *See also* Species Status Assessment, *supra* note 3 (Ex. B to Morrison Decl.), at 21–23, 29.

2001) (granting intervention to environmental groups that had advocated for policy

being challenged by plaintiff) (attached as Exhibit G to Morrison Decl.).

   **D.   Conservation Groups' interests are not adequately represented by any existing party.**

   Finally, Conservation Groups satisfy Rule 24(a) because no existing party

adequately represents their conservation-focused interests. While it may be presumed

that intervenor applicants that "seek to achieve the same objectives as an existing

party" are adequately represented, *Meek*, 985 F.2d at 1477, this presumption is

"weak" and "merely imposes upon the proposed interveners the burden of coming

forward with some evidence to the contrary." *Clark v. Putnam Cnty.*, 168 F.3d 458,

461 (11th Cir. 1999). Intervenors need only show that the current parties'

representation "'*may* be' inadequate; and the burden for making that showing should

be treated as *minimal*." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10

(1972) (emphasis added; internal citation omitted); *see also Stone*, 371 F.3d at 1311.

   Conservation Groups readily satisfy this requirement. *Clark*, 168 F.3d at 461.

Although Conservation Groups and Defendants presumably share the objective of

defeating Plaintiffs' claims, their interests are distinct in important ways.

   First, as government agencies and agency officials, Defendants are

accountable to a broader set of stakeholders and are guided by a broader set of

interests than Conservation Groups and therefore cannot adequately represent

Conservation Groups' interests. The governmental Defendants in this case must

represent and balance an array of public interests that extends even to the interest of

19

the Plaintiff and others who wish to build in Scrub-Jay habitat. By contrast, the Conservation Groups' interests lie solely in conserving the Florida Scrub-Jay and its habitat. *See supra* Section I.B. In similar circumstances, courts have repeatedly recognized that government agencies do not adequately represent private parties. *See Trbovich*, 404 U.S. at 538–39 (interests of government and private intervenor were not "identical" because the government "has an obligation to protect" a broader "public interest" than the interests private intervenor sought to vindicate); *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1254–56 (10th Cir. 2001) ("In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor."); *Coastal Conservation Ass'n v. Locke*, No. 2:09-CV-641-FtM-29SPC, 2010 WL 1407680, at *2 (M.D. Fla. Apr. 6, 2010) (governmental defendants' "general interest" in case involving ocean fisheries management "may not result in adequate representation" of environmental group's "specific interests").

Second, Conservation Groups' members have interests in Florida Scrub-Jay conservation that extend to their property ownership and economic activities, which government agencies and officials cannot represent. As noted in Section I.B above, one of Conservation Groups' members lives and owns his home in the same Prairie Creek Park subdivision where Plaintiff's land is located. *See* Klowden Decl. ¶ 2. He moved to Prairie Creek Park to live among the area's rare and unique wildlife, has an interest in the continued presence and enjoyment of such natural features around his home, and fears that his property value would decrease if application of the Charlotte

20

County HCP to Plaintiff were held unconstitutional. *See id.* ¶¶ 3, 16–18. Another of Conservation Groups' members owns an ecological services consultancy that derives substantial economic benefit from Florida Scrub-Jay conservation activities, including the Charlotte County HCP. *See* Handy Decl. ¶¶ 7, 12. She estimates that 25 percent of her consultancy's work involves the provision of services related to Scrub-Jays and is necessitated by the species' protections under the ESA and the Charlotte County HCP. *See id.* ¶¶ 9–10, 13. If those protections were invalidated, she would lose a significant source of income. *See id.* ¶¶ 7, 14. In addition, one of Conservation Groups' members earns his living as a fine artist, is known for painting Florida's wild places, has painted Florida Scrub-Jays in the past, and plans to paint more of them in the future. *See* Hale Decl. ¶¶ 5–7, 14. He fears that the market for his future Scrub-Jay paintings would decline if Scrub-Jays were to lose legal protections and become further depleted or even extinct. *See id.* ¶ 16.

Courts recognize that government entities cannot adequately represent such specific interests in property ownership and commercial activity by private parties. *See Georgia*, 302 F.3d at 1255–56, 1259 ("We do not believe that a federal defendant with a primary interest in the management of a resource has interests identical to those of an entity with economic interests in the use of that resource."); *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994); ("The government must represent the broad public interest, not just the economic concerns of [one] industry."); *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994, 1000–01 (8th Cir. 1993)

(governmental defendant could not adequately represent intervention-applicants' interests as landowners). For this reason, too, Conservation Groups' interests are not adequately represented by any existing party.

Accordingly, Conservation Groups satisfy all requirements for intervention as of right, and their motion should be granted.

## II.    Alternatively, the Court should grant permissive intervention.

As detailed above, Conservation Groups meet all requirements for intervention as of right under Rule 24(a). In the alternative, Conservation Groups should be granted permissive intervention under Rule 24(b). Permissive intervention is appropriate when (1) a movant files a timely motion; (2) the prospective intervenor has a claim or defense that shares a common question of law or fact with the main action; and (3) intervention will not unduly delay or prejudice existing parties. Fed. R. Civ. P. 24(b). Conservation Groups satisfy this test. As shown above, this motion is timely and will not prejudice any party. And Conservation Groups seek to present defenses relevant to this case's central issues: the legality of the Charlotte County HCP and of the Service's listing and protection of the Florida Scrub-Jay under the ESA. *See Fla. Wildlife Fed'n, Inc. v. Johnson*, No. 4:08CV324-RH/WCS, 2009 WL 248078, at *3 (N.D. Fla. Feb. 2, 2009) (intervenor prejudiced no party and raised issues in common with main action); *Coastal Conservation Ass'n*, 2010 WL 1407680, at *2 (M.D. Fla. Apr. 6, 2010) (permissive intervention for environmental group).

Permissive intervention is also warranted because Conservation Groups will contribute to the factual development of a key issue in this case: whether the Florida

Scrub-Jay has economic value and whether protecting it from extinction substantially affects interstate commerce. *See* Compl. ¶¶ 65–69, 80–84, ECF. No. 1 (alleging "[t]he Florida scrub-jay has no commercial or economic value"; "[t]akes of the Florida scrub-jay, aggregated to include the entire species, do not substantially affect interstate commerce"; and "[t]he inability to regulate the Florida scrub-jay would not frustrate USFWS's ability to regulate the take of commercially valuable species"). Plaintiff alleges that the federal government "has not made any findings that take of the Florida scrub-jay substantially affects interstate commerce." Compl. ¶ 65, ECF No. 1. Conservation Groups would fill that alleged gap. *See Gibbs v. Babbitt*, 214 F.3d 483, 493–94, 497 (4th Cir. 2000) (considering evidence of interstate tourism and scientific research related to endangered red wolf in holding red wolf regulation "substantially affects interstate commerce").

For example, wildlife viewing in Florida by out-of-state visitors generates a massive impact on interstate commerce. In 2011 alone, over 800,000 out-of-state residents took trips to view wildlife in Florida, generating nearly $2 billion in economic impacts within the state.[17] Nearly 750,000 of those visitors observed birds on their wildlife-viewing trips.[18] Conservation Groups intend to present evidence that a significant number of those out-of-state visitors come to Florida to see Florida

---

[17] Fla. Fish & Wildlife Conservation Comm'n, *The 2011 Economic Benefits of Wildlife Viewing in Florida* ii, 2, 5 (2013), https://myfwc.com/media/5067/2011-economics-benefits.pdf (excerpts attached as Exhibit H to Morrison Decl.). "Economic impacts" includes over $1 billion in retail sales, as well as salaries and wages, full- and part-time jobs, and state, local, and federal tax revenues. *See id.* at ii.

[18] *Id.* at 5.

Scrub-Jays—the only bird species found exclusively in Florida—and that they spend money on flights, hotels, car rentals, food, tours, and other items in the process. In addition to tourism, Conservation Groups intend to show how scientific research substantially impacts interstate commerce, such as at the world-renowned Archbold Biological Station in Venus, Florida. This research station hosts visiting students and researchers to study its resident Florida Scrub-Jays and learn from its scientists who have intensively studied these Scrub-Jays for over 50 years in one of the longest running continuous studies of any bird in the world.[19] Conservation Groups are particularly well positioned to make these showings as a result of their decades of advocacy in support of bird and other wildlife conservation in Florida and nationwide.

Courts recognize that permissive intervention may be warranted where, as here, prospective intervenors will contribute to the development of factual issues underlying a case. *See Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (intervenor applicant's capacity to "significantly contribute to full development" of factual issues may be grounds for permissive intervention); *Nat. Res. Def. Council, Inc. v. Tenn. Valley Auth.*, 340 F. Supp. 400, 408–09 (S.D.N.Y. 1971), *rev'd on other grounds*, 459 F.2d 255 (2d Cir. 1972) (granting permissive intervention to environmental group whose subject-matter expertise was expected to help "clarify[] the facts" of the case); *Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 103

---

[19] *See* Archbold, *Long-term Florida Scrub-Jay Project*, https://www.archbold-station.org/projects/long-term-florida-scrub-jay-project/ (last visited Jan. 27, 2025).

(D. Conn. 2007) (granting permissive intervention to a non-profit organization in part due to its "highly relevant factual perspective"). Accordingly, permissive intervention under Rule 24(b) is warranted in this case.

## CONCLUSION

The Court should grant Conservation Groups' Motion to Intervene.

## LOCAL RULE 3.01(g) CERTIFICATION

Defendant-Intervenor Applicants certify that they conferred with counsel for Plaintiff and Defendants via phone and email prior to filing this motion. Plaintiff opposes this motion, and Defendants Charlotte County and Federal Defendants reserve their positions on this motion.

Respectfully submitted this 28th day of January, 2025.

/s/ Alisa Coe
Alisa Coe
Earthjustice
111 S. Martin Luther King Jr. Blvd.
Tallahassee, FL 32301
Phone: (504) 388-6251
Fax: (850) 681-0020
acoe@earthjustice.org

Aaron Bloom* (*Special Admission Pending*)
Earthjustice
48 Wall Street, 15th Floor
New York, NY 10005
Phone: (917) 410-8727
Fax: (212) 918-1556
abloom@earthjustice.org
* *Lead Counsel*

Sharmeen Morrison** (*Special Admission Pending*)
Earthjustice
50 California Street #500
San Francisco, CA 94111
Phone: (415) 217-2005
Fax: (415) 217-2040
smorrison@earthjustice.org
** *Admitted in NY; not admitted in CA*

*Counsel for Defendant-Intervenor Applicants*

25