```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                   FORT MYERS DIVISION
```

MICHAEL COLOSI,

    Plaintiff,

     v.                      Case No.:  2:24-cv-01004-JES-KCD

CHARLOTTE COUNTY, FLORIDA,
UNITED STATES FISH AND WILDLIFE
SERVICE, MIKE OETKER, IN HIS
OFFICIAL CAPACITY AS REGIONAL
DIRECTOR OF THE UNITED STATES
FISH AND WILDLIFE SERVICES
SOUTHEAST REGION; UNITED
STATES DEPARTMENT OF THE
INTERIOR, PAUL SOUZA, IN HIS
OFFICIAL CAPACITY AS ACTING
DIRECTOR OF THE UNITED STATES
FISH AND WILDLIFE SERVICE; AND
DOUG BURGUM, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF THE
INTERIOR;

    Defendants,

FLORIDA WILDLIFE FEDERATION;
ENVIRONMENTAL CONFEDERATION OF
SOUTHWEST FLORIDA; CENTER FOR
BIOLOGICAL DIVERSITY; and
AMERICAN BIRD CONSERVANCY,

    Intervenor-Defendants,

_____

## OPINION AND ORDER

    This matter comes before the Court on Rule 12(b)(1) motions

to dismiss filed by Defendants Charlotte County (County) and the

U.S. Fish and Wildlife Service (Service) on April 21, 2025.[1] (Docs. ##44-45.) Plaintiff Michael Colosi (Plaintiff or Colosi) filed a combined Response in Opposition to both motions on June 11, 2025. (Doc. #55.) With leave from Court, the County and Service filed Replies on July 2, 2025. (Docs. ##65-66.) For the reasons set forth below, the motions are denied.

**I.**

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008)(citing McElmurray v. Consol. Gov't of Augusta-Richmond County, 501 F.3d 1244, 1250 (11th Cir. 2007)). "When, as here, there is a facial challenge to subject-matter jurisdiction, we take the factual allegations in the complaint as true." Stone v. Comm'r of Internal Revenue, 86 F.4th 1320, 1324 (11th Cir. 2023).[2]

---

[1] Apart from the present Rule 12(b)(1) motions, the County also moved to dismiss under Rule 12(b)(6) and Defendant-Intervenors moved for summary judgment under Rule 56. Those separate motions were stayed pending resolution of the present Rule 12(b)(1) motions. (Doc. #54.)

[2] No Defendant specified whether they were facially or factually attacking subject matter jurisdiction. Their motions are construed as facial attacks because there was no need to resolve questions of fact to resolve the motions. See Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A., 104 F.3d 1256, 1266 (11th Cir. 1997)(finding a 12(b)(1) dismissal to be on facial grounds because the district judge did not resolve questions of fact).

**II.**

Michael Colosi wants to build a home on a 5.07-acre parcel of land that he owns. (Doc. #38, ¶¶ 40, 42.) The Endangered Species Act (ESA), however, prohibits significant habitat modification or degradation that actually kills or injures protected species like the Florida scrub-jay. 16 U.S.C. § 1538(a)(1)(B)(prohibiting the "take" of protected species); 16 U.S.C. § 1532(19)(defining "take" to include harming); 50 C.F.R. § 17.3 ("Harm in the definition of 'take' . . . may include significant habitat modification or degradation where it actually kills or injures by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering."); 52 Fed. Reg. 20715 (classifying the Florida scrub-jay as a protected species under the ESA). As an exception, "if such taking is incidental to, and not the purpose of, the carrying out of an otherwise lawful activity," the ESA authorizes the issuance of a permit (ITP) upon receipt of a satisfactory conservation plan (HCP).[3] 16 U.S.C § 1539(a)(1)(B)-

---

[3] The conservation plan must specify:

    (i)    the impact which will likely result from such taking;

    (ii)   what steps the applicant will take to minimize and mitigate such impacts, and the funding that will be available to implement such steps;

    (iii)  what alternative actions to such taking the applicant considered and the reasons why such alternatives are not being utilized; and

(2). Violators of the ESA expose themselves to civil and criminal penalties. 16 U.S.C. § 1540.

The County submitted an HCP and received a currently active thirty-year ITP. (Doc. #38, ¶ 23.) Because of its location, Colosi's property is subject to the conditions of the County's HCP, as implemented by County Ordinance No. 2015-003, § 1, 2-10-15. (Id. ¶¶ 24-25, 41.) The only condition at issue here is the County's "HCP Development Fee". (Id. ¶¶ 66-67.) This is the fee charged by the County to include impacted properties like Colosi's into the County's ITP and HCP. (Id. ¶¶ 25, 46.) The fee is "based on the total acreage of the parcel as it was originally platted," regardless of how much of it is actually developed and without "an individualized determination of how much Florida scrub-jay habitat, if any, exists on a property or would be impacted by" development. (Id. ¶¶ 27-28, 46.) The County uses the fee to fund implementation of the County's HCP, including land acquisition and reserve development. (Id. ¶ 26.) The HCP Development Fee for Colosi's property is $139,440.00. (Id. ¶ 46.)

Colosi applied to join the County's HCP and ITP. (Id. ¶ 51.) But because Colosi refuses to pay the County's HCP Development

---

(iv)    such other measures that the Secretary may require as being necessary or appropriate for purposes of the plan.

16 U.S.C. § 1539(a)(2)(A)(i)-(iv).

4

Fee, the County refuses to approve his application, include
Colosi's property into the County's HCP, or to approve any clearing
or building permits. (Id. ¶ 68.) To build, Colosi sees only one
other option: obtaining an individual ITP directly from the
Service. (Id. ¶ 29.) Three separate communications previously gave
Colosi the temporary impression that this alternative option did
not exist. (Id. ¶¶ 30, 37-39.) One communication from a County
employee to Colosi expressly stated that joining the County's
HCP/ITP was the only option because the Service was not considering
individual ITPs for properties located in the County. (Id. ¶ 38.)

    Since the filing of this lawsuit, the Service has clarified
that it will consider applications for individual ITPs in Charlotte
County. (Id. ¶ 56.) Colosi inquired with the Service on what it
would take to receive an individual ITP from the Service. (Id. ¶
31.) The Service responded that "Colosi would have to develop and
negotiate his own HCP outlining what he proposes to do to 'avoid,
minimize, and mitigate' the impacts of his proposed development."
(Id. ¶ 33.) Avoidance, Colosi was told, typically involved
establishing a conservation easement in perpetuity. (Id. ¶ 34.)
Minimization usually involved not clearing woody vegetation during
nesting season (from March 1st through June 30th yearly), planting
a certain amount of scrub oaks, and agreeing to not let pets roam
free on the property. (Id. ¶ 35.) Mitigation involved one of three
options: (1) signing over land twice the amount of acreage

5

developed to an agency/entity willing to manage land, which may
require an additional management fee, (2) depositing about
$198,930.00 to a Service-approved fund for scrub-jay conservation,
or (3) purchasing about $180,000.00 worth of credits in a Service-
approved conservation bank. (Id. ¶ 36.) Once an HCP is agreed on,
Colosi would have to complete another form, pay a non-refundable
processing fee, and wait until the ITP was issued. (Doc. #38-2, p.
3.) The typical process takes six to twelve months. (Id.)

Colosi raises four claims. Count I, against the County,
alleges that the County's HCP Development Fee is an
unconstitutional condition on Colosi's property in violation of
the Fifth and Fourteenth Amendments because it bears no essential
nexus or rough proportionality to Colosi's planned development.
Counts II, III, and IV are against the Federal Defendants, alleging
that their regulation of the scrub-jay violates the Administrative
Procedure Act, Article 1, Section 8 of the Constitution, and places
an unconstitutional condition on Colosi's property. Among other
things, Colosi seeks to enjoin the County from enforcing its HCP
Development Fee and the Federal Defendants from enforcing its
regulations on the Florida-scrub on non-federal lands. He also
seeks nominal damages under § 1983 and actual damages for delay in
the construction and enjoyment of his home, lost use and enjoyment,
lost rent, and other economic and noneconomic losses.

**III.**

The parties challenge all three strands of justiciability: standing, ripeness, and mootness. <u>Baughcum v. Jackson</u>, 92 F.4th 1024, 1030 (11th Cir. 2024).[4] "The failure of any one of these

---

[4] The parties also advanced other arguments that are not considered herein. First, the Service and the County improperly raised issues for the first time in their reply briefs, "depriv[ing] [Colosi] of the 'opportunity to reflect upon and respond in writing to [their] arguments' and . . . depriv[ing] this Court of 'the benefit of written arguments.'" <u>Little v. T-Mobile USA, Inc.</u>, 691 F.3d 1302, 1307 (11th Cir. 2012)(quoting <u>Hamilton v. Southland Christian Sch., Inc.</u>, 680 F.3d 1316, 1319 (11th Cir. 2012)). The Service's reply brief raised the issue of sovereign immunity and the County's reply brief raised the issue of statute of limitations, which is likely a Rule 12(b)(6) issue. <u>See</u> <u>United States v. Hines</u>, No. 3:16-CV-1477-J-32PDB, 2017 WL 6536574, at *2 (M.D. Fla. Dec. 21, 2017). Those arguments are therefore improper and not considered. <u>Herring v. Sec'y, Dep't of Corr.</u>, 397 F.3d 1338, 1342 (11th Cir. 2005)("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'" (alteration in original)(quoting <u>United States v. Coy</u>, 19 F.3d 629, 632 n. 7 (11th Cir. 1994))).

Second, the Service's motion to dismiss raised separate arguments "to the extent Plaintiff's [Count IV] attempts to allege a Fifth Amendment taking claim against the Service . . . ." (Doc. #44, p. 20.) Colosi responded that Count IV is based on an alleged violation of Article I, Section 8 and not on the Fifth Amendment, despite a "scrivener's error" in the second paragraph under the prayer for relief section of his complaint. (Doc. #55, p. 19 n.5) The Service recognized any Fifth Amendment claim in Count IV as "abandoned" and "dropp[ed]". (Doc. #65, pp. 2-3.) Therefore, the Service's separate arguments as to Count IV need not be addressed.

The second paragraph under the complaint's prayer for relief section (Doc. #38, p. 23) is stricken and replaced as follows: "Declare that requiring Mr. Colosi to seek an incidental take permit from the Service as a condition of developing his property constitutes an unconstitutional condition on his right to make reasonable use of his property, in violation of Article I, Section 8 of the United States Constitution". Any amended complaint in the

strands can deprive a federal court of jurisdiction." Id. (quoting Strickland v. Alexander, 772 F.3d 876, 883 (11th Cir. 2014)). Each will be addressed in turn.

**A. Standing**

First, the Defendants argue Colosi lacks standing. The County argues that Plaintiff lacks standing because, by voluntarily applying to the County's non-mandatory HCP/ITP, he has manufactured his own injury. (Doc. #45, p. 14.) Similarly, the Service argues that Colosi lacks standing because he fails to show the Service's regulation of the Florida scrub-jay has caused him an injury-in-fact since an individual ITP from the Service is not mandatory, Colosi's own allegations suggest no take would occur, and Colosi has not applied or engaged in obtaining an individual ITP. (Doc. #44, pp. 10-14.) The Court disagrees.

Standing consists of three elements: injury in fact, causation, and redressability. Diamond Alternative Energy, LLC v. Env't Prot. Agency, 145 S. Ct. 2121, 2133 (2025). "A plaintiff at the pleading stage, as the party invoking federal jurisdiction, bears the burden of establishing these elements by alleging facts that 'plausibly' demonstrate each element." Tsao v. Captiva MVP Rest. Partners, LLC, 986 F.3d 1332, 1337 (11th Cir. 2021)(quoting Trichell v. Midland Credit Mgmt., Inc., 964 F.3d 990, 996 (11th

---

future shall reflect the aforementioned change unless otherwise ordered by the Court.

Cir. 2020)). In plain language, "the plaintiff [must plausibly] show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate for it." Muransky v. Godiva Chocolatier, Inc., 979 F.3d 917, 924 (11th Cir. 2020).

### 1. Injury in fact

For the injury in fact element, a plaintiff needs to plead an injury that "is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." Sierra v. City of Hallandale Beach, Fla., 996 F.3d 1110, 1113 (11th Cir. 2021)(quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). "A concrete injury is one that actually exist[s] and is real rather than abstract. A particularized injury is one that affect[s] the plaintiff in a personal and individual way. An actual or imminent injury, unlike a conjectural or hypothetical one, is one which has occurred, is certainly impending, or has substantial risk of occurring." Baughcum, 92 F.4th at 1031 (internal quotations and citations omitted).

Colosi plausibly pled several concrete, particularized harms. Colosi pled that, because of the Defendants' unconstitutional regulation of the Florida scrub-jay, he faces two options: (a) pay $139,440.00 to the County to join its HCP/ITP or (b) pay more to the Service, and engage in an overall "more burdensome[] and more time-consuming" process, to obtain an individual ITP. (Doc. #38, ¶ 57.) Colosi spent time trying to obtain either. (Doc. #38, Exs.

B-F)(multiple emails between Colosi, the County, the Service, and
Colosi's filled out application for the County's ITP). Among other
things, Colosi pled that Defendants' scrub-jay regulations
violated his Fifth Amendment property rights, delayed
construction, and caused him to lose use and enjoyment of his
property. (Id., pp. 23-24, ¶¶ 1, 4.)

Binding precedent recognizes these as concrete injuries.
Alabama-Tombigbee Rivers Coal. v. Norton, 338 F.3d 1244 (11th Cir.
2003)(holding that a plaintiff who incurred costs because their
properties were subject to ESA regulations suffered economic harm
and an injury in fact); see also E.g. Losch v. Nationstar Mortg.
LLC, 995 F.3d 937, 943 (11th Cir. 2021)("[T]here is no question
that wasted time is a concrete harm."); Polelle v. Fla. Sec'y of
State, 131 F.4th 1201, 1209 (11th Cir. 2025)("Constitutional
injuries are prototypical concrete injuries."); MSPA Claims 1, LLC
v. Tenet Fla., Inc., 918 F.3d 1312, 1318 (11th Cir. 2019)(holding
that a delay in being able to make use of personal property is
alone a sufficient concrete injury for standing). "And a plaintiff
like [Colosi], who suffers these concrete harms himself,
necessarily satisfies the particularity requirement, too." Walters
v. Fast AC, LLC, 60 F.4th 642, 648 (11th Cir. 2023).

The Service's arguments to the contrary unpersuasively rely
on Lujan.[5] (See Doc. #44, pp. 13-15.) The plaintiffs in Lujan were
wildlife conservation organizations that sued because a regulation
contracted the scope of a particular ESA section from including
foreign nations to only the United States or the high seas. Id.,
504 U.S. at 558-59. Their "claim to injury [wa]s that the
[challenged action] increas[ed] the rate of extinction of
endangered and threatened species." Id. at 562 (quotations and
citation omitted). The Supreme Court held those plaintiffs did not
have an injury in fact, nor thereby standing, on the grounds of
particularization and imminence. Id. at 564 (casting aside the
concreteness issue and finding plaintiffs failed to "show[] how
damage to the species will produce 'imminent' injury to [at least
one member of the plaintiff organizations].") . Specifically,
plaintiffs there failed to show that any of their "members would
thereby be 'directly' affected apart from their 'special interest
in th[e] subject.'" Id. at p. 563 (citation modified)(quoting
Sierra Club v. Morton, 405 U.S. 727, 734 (1972)).

---

[5] The County's standing argument and cited cases therein only
relate to the actual or imminent subtest of injury in fact, not
concreteness or particularization. (See Doc. #45, pp. 14-15.)

In contrast, no party here disputes that Colosi is directly affected by the scrub-jay regulations.[6] Colosi is so affected that the County identifies he has only two options under the regulations: join their ITP or get an individual ITP from the Service. (Doc. #45, p. 7.) The Service, in contradiction to the County, says Colosi has one more option under the regulations: proceed without any ITP, but admits that by doing so, Colosi runs the "risk" of civil and criminal penalties under the ESA. (Doc. #44, p. 16.) All the same, the scrub-jay regulations directly affect Colosi by forcing him to either obtain an ITP or risk criminal/civil penalties.

This case is therefore unlike Lujan, whose plaintiffs were not directly affected by the regulations being challenged. Because of this distinction, Lujan actually cuts in favor of Colosi, not against him. Id., 504 U.S. at 561-62 (stating that "[w]hen the suit is one challenging the legality of a government action," and "the plaintiff is himself an object of the action," then "there is ordinarily little question that the action . . . has caused him injury, and that a judgment preventing or requiring the action will redress it."). See also Diamond Alternative Energy, 145 S.

---

[6] The parties dispute whether Colosi would actually "take" the Florida scrub-jay or the alternatives he has under the regulations but those are not the relevant questions here.

Ct. at 2135. The Court finds Colosi has plausibly alleged concrete,
particularized injuries.

Next, the "actual <u>or</u> imminent" subtest of the injury in fact
element "often depends on the type of relief the plaintiff seeks."
<u>Sierra</u>, 996 F.3d at 1113. Since Colosi "seeks damages, we consider
whether an alleged <u>past</u> harm occurred." <u>Id.</u> And since Colosi also
seeks declaratory or injunctive relief, he must also allege
imminent <u>future</u> harm"—that there is 'a sufficient likelihood that
he will be affected by the allegedly unlawful conduct in the
future.'" <u>Kennedy v. Floridian Hotel, Inc.</u>, 998 F.3d 1221, 1230
(11th Cir. 2021)(quoting <u>Koziara v. City of Casselberry</u>, 392 F.3d
1302, 1305 (11th Cir. 2004)). <u>See also</u> <u>Strickland</u>, 772 F.3d at
883. Though "elastic," the imminence requirement at bottom seeks
to ensure that the alleged injury is not too speculative. <u>Clapper
v. Amnesty Int'l USA</u>, 568 U.S. 398, 409 (2013).

Colosi has plausibly alleged the requisite past and imminent
future harm. By alleging past delays, (Doc. #38, ¶ 50), time spent
trying to obtain an ITP, (see <u>id.</u>, Exs. B-F), and that the County
has refused to approve an ITP (along with any clearing or building
permits), (<u>id.</u> ¶ 68), Colosi has sufficiently alleged past harm.
Imminent future harm, meanwhile, is not too speculative because
"when the threatened acts that will cause injury are authorized or
part of a policy, it is significantly more likely that the injury

13

will occur again." 31 Foster Child. v. Bush, 329 F.3d 1255, 1266
(11th Cir. 2003).

The application of 31 Foster Child. to this case is
illustrated by Alabama-Tombigbee. There, the issue was whether a
plaintiff had standing when similarly seeking declaratory and
injunctive relief for the listing of a specific species under the
ESA. Id., 338 F.3d at 1246, 1249. That plaintiff submitted
affidavits stating the listing of the species gave the Service the
opportunity to impact plaintiff's use of its property, causing
delays and increasing costs. Id. at 1249-50. Citing the affidavits
and 31 Foster Child., the Eleventh Circuit held there was past and
imminent future harm because "the [plaintiff] is operating against
the backdrop of a continuing policy that was triggered by the
listing and is effectuated by the machinery of the ESA." Alabama-
Tombigbee, 338 F.3d at 1253. Because Colosi has alleged similar
harm at the hands of the scrub-jay regulations, that are still in
effect and continuing, he has sufficiently pled past and future
imminent harm.[7]

The arguments to the contrary are unpersuasive. The Service
argues that any injury is not actual or imminent because Colosi

---

[7] Since "the plaintiff bears the burden of proof, i.e., with the
manner and degree of evidence required at the successive stages of
the litigation," Colosi's allegations sufficed at this motion to
dismiss stage, and he did not have to submit evidence like the
plaintiff in Alabama-Tombigee, who was in the summary judgment
stage. Lujan, 504 U.S. at 561.

14

has not applied for an ITP through the Service, nor requested technical assistance from the Service. (Doc. #44, p. 14.) The argument is unpersuasive because, "[u]nder well-established caselaw, this fact does not matter. A plaintiff can satisfy the injury-in-fact requirement even if his injury rests on a formal application he did not submit when that formal application would merely be a 'futile gesture' and he was otherwise 'able and ready' to apply." Baughcum, 92 F.4th at 1035 (quoting Carney v. Adams, 592 U.S. 53, 66 (2020)).

Colosi pled sufficient facts to show that applying for an ITP from the Service was futile even though he was able and ready to do so. He alleged that he wants to build a home and has already bought a plot of land. (Doc. #38, ¶¶ 40, 42.) He alleged that he contacted the Service, seeking an individual ITP. (Id. ¶ 31.) He alleged the Service responded with a list of unconstitutional application requirements. (Id. ¶¶ 32, 57-58.) He alleged those requirements were "considerably more expensive, more burdensome, and more time-consuming than paying the County's unconstitutional Scrub-jay Fee." (Id. ¶ 58.) He alleged that he applied for an ITP, but through the County. (Id. ¶ 51.) He alleged the County refused his application because he refused to accede to what he alleges are unconstitutional demands. (Id. ¶ 68.) Colosi's alleged ITP application with the County, relevant ITP application conversations with the Service, buying of an empty plot of land,

and statement of intent to build, collectively show Colosi was able and ready to apply for an ITP through the Service. See Carney, 592 U.S. at 63-66. Colosi also showed submitting an ITP application to the Service would have been futile because the Service allegedly required unconstitutional demands and Colosi is unwilling to accede them, resulting in a denied application like in the case of his ITP application with the County. See Baughcum, 92 F.4th at 1035; see also Maron v. Chief Fin. Officer of Fla., 136 F.4th 1322, 1332-33 (11th Cir. 2025).

The next argument, by both the County and the Service, is that any injury is not actual or imminent because Colosi does not have to obtain their specific ITP. Recall that the County argues its ITP is not mandatory because Colosi can alternatively get an ITP from the Service. (Doc. #45, pp. 14-15.) And the Service argues its ITP is not mandatory because Colosi can alternatively get an ITP from the County or just risk criminal and civil penalties under the ESA. (Doc. #44, p. 16.) Those arguments fail because Colosi alleges that the scrub-jay regulations are unconstitutional, and "[b]eing forced to choose between suffering criminal punishment or giving up a constitutional right is an injury in fact." Baughcum, 92 F.4th at 1032.

The Supreme Court has "held that a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a

16

constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159(2014)(quoting Babbitt v. Farm Workers, 442 U.S. 289, 298 (1979)). The Eleventh Circuit describes this standard as "quite forgiving." Wilson v. State Bar of Ga., 132 F.3d 1422, 1428 (11th Cir. 1998)(quoting New Hampshire Right to Life Political Action Comm. v. Gardner, 99 F.3d 8, 13 (1st Cir. 1996)). See also Wollschlaeger v. Governor, Fla., 848 F.3d 1293, 1305 (11th Cir. 2017). Colosi satisfies this standard because he has alleged an intention to use his property, that the scrub-jay regulations unconstitutionally limit his use, and that the regulations are subject to enforcement. (Doc. #38, ¶¶ 7-8.)

The Service unpersuasively argues any Colosi injury is not actual or imminent because he has not shown that he "faces a threat of imminent enforcement action" from the Service. (Doc. #44, p. 14.) The Supreme Court has held that a credible threat of prosecution exists when an applicable criminal penalty provision exists and "the State has not disavowed any intention of invoking the criminal penalty provision against [the potential violator]," even if no criminal penalties had ever been imposed under the statute and none might ever be imposed. Babbitt, 442 U.S. at 302. See also New Hampshire, 99 F.3d at 14. Colosi therefore suffers a credible threat of prosecution because the Service has far from disavowed the criminal (and civil) penalty provisions of the ESA.

(Doc. #44, p. 16 n.8)(the Service indicating it might or might not pursue civil and criminal penalties, as authorized by the ESA, against Colosi). Contrary to the Service's argument, it is inapposite that Colosi believes he will not actually take the scrub-jay and violate the ESA. Susan B. Anthony, 573 U.S. at 163 (rejecting a similar argument because a plaintiff's allegations or beliefs "did not prevent the [enforcement agency] from finding probable cause" and prosecuting the plaintiff).

The Court finds Colosi has sufficiently pled an injury in fact.

**B. Ripeness**

The movants also argue the case is not ripe. "[R]ipeness relates to the timing of the suit," Elend v. Basham, 471 F.3d 1199, 1205 (11th Cir. 2006), asking whether it is too soon for proper adjudication. Gardner v. Mutz, 962 F.3d 1329, 1337 (11th Cir. 2020). "To determine whether a claim is ripe, we must weigh two factors: '(1) the hardship to the parties of withholding court consideration; and (2) the fitness of the issues for judicial review.'" Waldman v. Conway, 871 F.3d 1283, 1290 (11th Cir. 2017)(quoting Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999)). Hardship "asks about the costs to the complaining party of delaying review until conditions for deciding the controversy are ideal." Maron, 136 F.4th at 1332 (quoting Harrell v. The Fla. Bar, 608 F.3d 1241, 1258 (11th Cir. 2010)). Fitness asks about

"finality, definiteness, and the extent to which resolution of the
challenge depends upon facts that may not yet be sufficiently
developed." Id.

Sometimes "the standing and ripeness analysis tend to
converge." Baughcum, 92 F.4th at 1036. For ripeness, the Service
and the County advance the same arguments as they did for standing.
Again, they argue that Colosi did not submit an ITP application to
the Service or engage with the Service as needed, that obtaining
an ITP is not mandatory, and that Colosi's allegations do not show
he would be subject to penalties under the ESA. (Doc. #44, pp. 18-
19); (Doc. #45, pp. 12-13.) Therefore, "[t]his is one of those
cases where 'the Article III standing and ripeness issues . . .
'boil down to the same question[s].'" Wollschlaeger v. Governor,
Fla., 848 F.3d 1293, 1304 (11th Cir. 2017)(citation
modified)(quoting Susan B. Anthony, 573 U.S. at 2341 n.5). And
because the Court already addressed those questions in its standing
analysis, Colosi's "claims are ripe for the same reasons [he]
suffered an injury in fact." Baughcum, 92 F.4th at 1036.

**C. Mootness**

Lastly, the County argues Count I, and specifically the
requested declaration that the County's HCP Development Fee is an
unconstitutional condition, is moot because the Service clarified
in a February 2025 letter that joining the County's HCP/ITP is not
mandatory. (Doc. #45, pp. 17-18.) Whereas ripeness asks whether a

19

claim is too early, mootness asks whether a claim is too late. Mutz, 962 F.3d at 1337. A claim "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." Gutierrez v. Saenz, 145 S. Ct. 2258, 2269 (2025)(quoting Chafin v. Chafin, 568 U.S. 165, 172 (2013)). The County, like with standing and ripeness, fails to show that alternatives affect mootness. That Colosi has at least another alternative other than the County's ITP does not make it impossible for the Court to declare the HCP Development Fee an unconstitutional condition. The County's mootness argument is denied.

Accordingly, it is now

    **ORDERED:**

1. The Service's Rule 12(b)(1) motion (Doc. #44) is **DENIED.**

2. The County's Rule 12(b)(1) motion to dismiss in Doc. #45 is **DENIED.**

3. The second paragraph under the complaint's prayer for relief section (Doc. #38, p. 23) is **stricken** and replaced as follows: "Declare that requiring Mr. Colosi to seek an incidental take permit from the Service as a condition of developing his property constitutes an unconstitutional condition on his right to make reasonable use of his property, in violation of Article I, Section 8 of the United States Constitution". Any

amended   complaint   in   the   future   shall   reflect   the
aforementioned change unless otherwise ordered by the Court.

4. Since   the   Rule   12(b)(1)   motions   are   now   resolved,   the
previously stayed motions (Docs. ##45, 52) are **denied without
prejudice**. Within **TWENTY-ONE (21) DAYS** of this Order, the
parties must file an answer to the complaint or appropriate
motions in response to the complaint.

**DONE AND ORDERED** at Fort Myers, Florida, this   22nd   day of
September 2025.


JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE